IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARCUS WITHERSPOON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-19-889 |
| CO II RYAN LAROSE and<br>CO II KEVIN CLARK,[1] | * | |
| | * | |
| Defendants. | | |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants CO II Ryan LaRose and CO II Kevin Clark's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 21). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant Defendants' Motion and dismiss the Complaint.

### I.   BACKGROUND

Plaintiff Marcus Witherspoon filed this civil rights action on March 25, 2019 while he was incarcerated at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland. (See Compl., ECF No. 1).[2] In his unverified Complaint, Witherspoon alleged that he was maced during a May 6, 2018 fight with his cell mate. (Id.

---

[1] The Court will direct the Clerk to amend the docket to reflect the full and correct names of Defendants CO II Ryan LaRose and CO II Kevin Clark.
[2] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

at 3). After the altercation, corrections officers placed Witherspoon in a new cell. (Id.). Witherspoon requested a new bed mattress, bedding, towels, and a washcloth because his items were covered in mace. (Id.). Corrections officers told him that his bedding, towels, and washcloth would be cleaned, but that he would have to pay for a new mattress. (Id.). Witherspoon refused to sign a money voucher to pay for the mattress. (Id.). Despite his refusal to authorize the payment, $80.00 was later taken from his account. (Id.). Witherspoon alleged that the money was taken after Defendants forged his signature on a voucher. (Id.). Witherspoon sought unspecified damages and the return of $80.00 taken from his prison account. (Id.).

By Order dated April 1, 2019, the Court informed Witherspoon that the facts, as presented, did not state a valid claim. (Order at 2, ECF No. 3). In particular, the Court noted that Witherspoon did not allege that the use of mace was unwarranted, that he was denied a mattress for an extended period and suffered physical injury as a result, or that he was not provided a new mattress. (Id.). Therefore, the Court granted Witherspoon additional time to supplement his Complaint. (Id.).

On April 15, 2019, Witherspoon filed an Amended Complaint repeating the same allegations. (Am. Compl., ECF No. 4). Then, on May 17, 2019, Witherspoon filed correspondence claiming that Defendants took money out of his account "because of them not liking me and them thinking because I have a mental disorder I wouldn't be able to figure out [what] they were doing." (Correspondence, ECF No. 6). Witherspoon also alleged that Defendants treated him differently than other inmates, as no other inmates have been forced to pay for a new mattress, including the other inmate involved in the

2

altercation. (Id. at 2). Witherspoon claims that he has been maced again since the May 2018 incident, but he was not directed to pay for a new mattress the second time. (Id. at 4).

Witherspoon filed an Administrative Remedy Procedure ("ARP") regarding the incident, which the Warden dismissed. (ECF No. 4 at 2). Thereafter, Witherspoon appealed to the Commissioner of Correction, who dismissed the appeal. (Id.). Witherspoon claims that he appealed to the Executive Director at the Department of Public Safety and Correctional Services ("DPSCS") but did not receive a response. (Id.).

On September 20, 2019, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 21). Witherspoon filed an Opposition on October 10, 2019. (ECF No. 27). To date, the Court has no record that Defendants filed a Reply.

## II. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although courts should construe pleadings of self-represented litigants liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, Iqbal, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005).

**B.     Analysis**

    **1.     Exhaustion**

Defendants first argue that Witherspoon's claim must be dismissed because he has failed to exhaust his administrative remedies pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

4

some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see Chase v. Peay, 286 F.Supp.2d 523, 528 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. See Jones v. Bock, 549 U.S. 199, 215–16 (2007); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, a claim brought by a prisoner who has not exhausted his administrative remedies may not be considered by this Court. See Bock, 549 U.S. at 220. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. Ross v. Blake, 136 S.Ct. 1850, 1857 (2016).

DPSCS has made an Administrative Remedy Procedure ("ARP") available to Maryland state prisoners for "inmate complaint resolution." See Md. Code Ann., Corr. Servs. ("C.S.") §§ 10-201 et seq.; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1). If the ARP is denied, the prisoner has thirty days to file an appeal with the Commissioner of Correction. If the Commissioner of Correction denies the appeal, the prisoner has thirty days to file a grievance with the Inmate Grievance Office ("IGO"). OPS.185.0002.05D; C.S. §§ 10-206(a), 10-210; COMAR 12.07.01.05B. When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in

merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); see COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Here, Witherspoon failed to completely pursue his administrative remedies. Although he completed the first two steps by filing an ARP and an appeal from its denial, it is undisputed that he did not file a grievance with the IGO. As discussed above, the PLRA requires that inmates exhaust all available remedies. Because Witherspoon failed to do so, his claims are subject to dismissal.

### 2. Substantive Claims

Even if Witherspoon had properly exhausted his administrative remedies, his Complaint would nonetheless be subject to dismissal because it fails to state a claim upon which relief may be granted. To bring a claim pursuant to 42 U.S.C. § 1983, the plaintiff must establish a violation of a constitutional right or federal law. See Baker v. McCollan, 443 U.S. 137, 140 (1979). Here, Witherspoon fails to identify the constitutional right or federal law implicated by the removal of $80.00 from his prison account. Reading his Complaint generously, Witherspoon, at best, appears to bring a claim for deprivation of property or discrimination. The Court addresses these claims in turn.

To the extent Witherspoon attempts to bring a claim for violation of due process under the Fourteenth Amendment of the United States Constitution, this claim is unavailing. Claims of negligent deprivation of property by a prison official do not implicate the Due Process Clause. See Daniels v. Williams, 474 U.S. 327, 332, 335–36 (1986); see also Parratt v. Taylor, 451 U. S. 527, 540 (1981), overruled on other grounds by Daniels v.

6

Williams, 474 U.S. 327 (1986). Moreover, a claim of intentional deprivation of property by a prison official does not state a constitutional due process claim where the prisoner has access to an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Tydings v. Dep't of Corrs., 714 F.2d 11, 12 (4th Cir. 1983). The right to seek damages and injunctive relief in Maryland courts in a tort action constitutes an adequate post-deprivation remedy for inmates in Maryland prisons. See Juncker v. Tinney, 549 F.Supp. 574, 579 (D. Md. 1982);[3] see also Hawes v. Foxwell, No. DKC-17-2598, 2018 WL 2389060, at *4 (D.Md. May 25, 2018) (noting that the Maryland Tort Claims Act and the IGO provide adequate post-deprivation remedies). Because Witherspoon has post-deprivation remedies in state court, the allegation that Defendants intentionally took Witherspoon's personal property is insufficient to state a colorable due process claim. See Hawes, 2018 WL 2389060, at *4 (dismissing an inmate's property loss claim for failure to state a cognizable constitutional claim).

To the extent Witherspoon alleges that Defendants have discriminated against him in violation of the Equal Protection Clause, this claim similarly fails. The Equal Protection Clause generally requires the government to treat similarly situated people alike. See Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). To show that his equal protection rights were violated, a plaintiff must demonstrate that he was treated differently

---

[3] Although Juncker dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property. See Juncker, 549 F.Supp. at 579 (analyzing Parratt, 451 U. S. at 540).

than similarly situated inmates and the discrimination was intentional or purposeful. See Williams v. Bitner, 307 F.App'x 609, 611 (3d Cir. 2009) (citing Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985)). Differential treatment alone does not state an equal protection claim in the absence of a showing that the inmate was similarly situated to those treated differently. See Moss v. Clark, 886 F.2d 686, 691 (4th Cir. 1989). If the plaintiff satisfies the first prong, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotation marks omitted) (citing Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)).

For the second prong, unless a suspect class is involved, disparate treatment "is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" Veney, 293 F.3d at 731 (quoting Heller v. Doe, 509 U.S. 312, 319–20 (1993)). When equal protection challenges arise in the prison context, however, "courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner." Id. at 732. That is, even when a "regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." King v. Rubenstein, 825 F.3d 206, 221 (4th Cir. 2016) (quoting Turner v. Safley, 482 U.S. 78, 89 (2005)). To evaluate whether an action is reasonable, the Court looks to: (1) whether there is a "valid, rational connection between the policy and the penological interest"; (2) whether there is an "alternative means of exercising the right" available to inmates; (3) what "impact accommodation of the asserted right will have on"

8

the prison, including guards, other inmates, and prison resources; and (4) "the absence of ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests." Id. (quoting Morrison, 239 F.3d at 655).

Even assuming there is merit to Witherspoon's allegation that he was the only inmate required to pay for a new mattress, Witherspoon fails to allege that any difference in the treatment of inmates was unjustified. The DPSCS Executive Directive provides that prison managing officials may deduct the value of state property that is destroyed by the gross negligence of the inmate without that inmate's authorization. See ADM.245.0001.05(F)(3)(a)(ii). Because this regulation is reasonably related to legitimate penological interests, such as the ability of prison officials to operate the facility in a safe manner, the facts presented here simply do not rise to the level of an equal protection claim.

In sum, because Witherspoon fails to state a cognizable due process or equal protection claim, his Complaint must be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 21). A separate Order follows. Entered this 16th day of September, 2020.

/s/
George L. Russell, III
United States District Judge